IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:<br>IRISH BANK RESOLUTION CORPORATION<br>LIMITED, | : <br> : <br> : <br> : | Chapter 15<br>Bankr. Case No. 13-12159-CSS<br>(Jointly Administered) |
| Debtors. | : <br> : | |
| PADDY MCKILLEN, ANTHONY LEONARD,<br>and CLARENDON PROPERTIES LIMITED, | : <br> : <br> : | |
| Appellants,<br>v. | : <br> : <br> : | Civ. No. 18-1797-LPS |
| KIERAN WALLACE and EAMONN<br>RICHARDSON, | : <br> : <br> : | |
| Appellees. | : | |

**MEMORANDUM**

## I. INTRODUCTION

Pending before the Court is an appeal (D.I. 1) by Paddy McKillen, Anthony Leonard, and Clarendon Properties Limited (together, "Appellants" or the "Clarendon Parties") from the Bankruptcy Court's October 31, 2018 Order (B.D.I. 659) ("Order") denying Appellants' motion (B.D.I. 633)[1] ("Stay Relief Motion") which sought (i) a determination that the automatic stay under Section 362 of the Bankruptcy Code did not bar their prospective adversary complaint against Kieran Wallace and Eamonn Richardson, in their individual capacity ("Appellees"), or alternatively, (ii) relief from the automatic stay in order to file an adversary complaint. The complaint alleged that Appellees, who were appointed as foreign representatives (the "Foreign Representatives") of Irish Bank Resolution Corporation Limited (In Special Liquidation)

---

[1] The docket of the Chapter 15 case, captioned *In re Irish Bank Resolution Corporation Limited*, 13-12159-CSS (Bankr. D. Del.), is cited herein as "B.D.I. __."

1

("IBRC" or the "Debtor"), have violated rules under Chapter 15 and United States law, and those violations must be redressed in the Bankruptcy Court. The Order denied the Stay Relief Motion for the reasons set forth on the record at the October 31, 2018 hearing. (B.D.I. 661) ("Hr'g Tr.") For the reasons that follow, the Court will affirm the Order.

## II. BACKGROUND

IBRC is an Irish incorporated company located in Dublin, Ireland. *See In re Irish Bank Resolution Corp. Ltd.*, 2014 WL 9953792, at *7-8 (Bankr. D. Del. Apr. 30, 2014), *aff'd sub nom. Flynn v. Wallace (In re Irish Bank Resolution Corp. Ltd.)*, 538 B.R. 692 (D. Del. 2015). IBRC holds the remaining assets and liabilities of both Anglo Irish Bank Corporation Limited ("Anglo"), a distressed financial institution nationalized by the Irish government following the global financial crisis of 2008, and Irish Nationwide Building Society, another distressed financial institution previously nationalized by the Irish government. *See id.* at *5. As the effects of the global financial crisis continued to impair the Irish economy, the Irish government determined that it was necessary to wind down IBRC. *See id.* Accordingly, on February 7, 2013 the Irish Parliament passed the Irish Bank Resolution Corporation Act of 2013 ("IBRC Act"), which was signed into law immediately thereafter. *See id.* The Irish Minister for Finance (the "Finance Minister"), acting pursuant to the authority granted under the provisions of the IBRC Act, issued the Special Liquidation Order on February 7, 2013, commencing IBRC's pending liquidation proceeding in Ireland (the "Irish Proceeding") and appointing the Foreign Representatives as special liquidators (the "Special Liquidators") for IBRC. *See id.* at *7. The Special Liquidators have a duty to maximize the value of IBRC's assets for the benefit of all creditors. *See id.* at *13.

On December 18, 2013, the Bankruptcy Court issued an order recognizing the Irish Proceeding (B.D.I. 187) (the "Recognition Order"), which was subsequently affirmed on appeal by this Court on August 4, 2015. *See Irish Bank Resolution Corp.*, 538 B.R. at 692. Appellants had been Anglo clients for many years, having borrowed large sums from the bank to help fund their extensive property portfolio, including a property portfolio valued in excess of $350,000,000 in the United States. (D.I. 11 at 5)

On July 13, 2018, Appellants filed the Stay Relief Motion, seeking entry of an order determining that the automatic stay does not apply or, alternatively, granting relief from the automatic stay in order to file the complaint. (B.D.I. 633) A draft complaint naming Wallace and Richardson, individually, as defendants was filed as an exhibit to the Stay Relief Motion. (B.D.I. 633-3) The complaint did not name the Debtor, IBRC, or any other parties as defendants.

The complaint alleges claims that relate to certain facility letters (collectively, the "Facility Letters") issued by Anglo, dated July 10, 2008, July 17, 2008, and January 5, 2009, as well as a loan sale deed (the "Loan Sale Deed"). (*See* B.D.I. 633-3 ¶¶ 56, 64, 66, 95) The complaint alleges that the Facility Letters related to certain loans provided by Anglo to fund the purchase of Anglo's outstanding shares, with the acquired shares to be held in escrow by or on behalf of Anglo. (*Id.* ¶ 41) The complaint asserts that the Foreign Representatives, in their capacity as Special Liquidators, must treat McKillen as an unsecured creditor and/or potential beneficiary of the estate in liquidation, and – due to McKillen's status – the Special Liquidators owe McKillen absolute duties of loyalty, candor, disclosure, due care, impartiality, good faith, and fair dealing. (*Id.* ¶¶ 73-74)

The complaint alleges that, in or about early 2009, the Irish government passed legislation "mandatorily transferring all Anglo shares to the Irish Minister for Finance,"

3

effectively nationalizing the bank. (*Id.* ¶ 67) The crux of the complaint arises from a lawsuit (the "Irish Recovery Action") commenced by the Foreign Representatives, in their capacity as Special Liquidators of IBRC, in the Irish High Court against McKillen on July 16, 2014. (B.D.I. 633-3, ¶ 102) The complaint alleges that McKillen was served with a summons in the Irish Recovery Action in July 2015. (*Id.*) The complaint further alleges that the Irish Recovery Action seeks repayment of certain outstanding loan amounts under the Facility Letters, in addition to interest and costs associated therewith. (*Id.*) The complaint does not allege that the Foreign Representatives have any relationship with the Appellants outside of their role as Foreign Representatives and Special Liquidators of IBRC; nor does the complaint allege that the Foreign Representatives have taken any action within the United States that have impacted the Appellants. Instead, the complaint focuses solely on actions taken by the Foreign Representatives in Ireland, which Appellants allege have impacted and injured Appellants' business interests in the United States. (*Id.* ¶¶ 102-13) The complaint asserts claims for breaches of fiduciary duty, fraud, misrepresentation, negligent misrepresentation, and other misconduct against Wallace and Richardson – all of which, Appellants assert, represent breaches of common law duties of care and violations of the Bankruptcy Code and rules. By the complaint, Appellants seek: (1) a monetary judgment against Wallace and Richardson arising out of their personal misuse of the Chapter 15 process; and (2) a modification of the Bankruptcy Court's Recognition Order to terminate the recognition of Wallace and Richardson as foreign representatives under Chapter 15. (B.D.I. 633-3)

Appellants asserted that they filed the Stay Relief Motion, seeking confirmation that the automatic stay did not apply to the complaint, out of an abundance of caution and as a safeguard against the severe penalties that might be imposed if they were seen to be willfully violating the

automatic stay or the *Barton* doctrine (which is explained further below). (B.D.I. 633) In the Stay Relief Motion, Appellants argued that there is no stay violation because they did not seek to litigate any claims against the Debtor or its assets. (*Id.* at 1) Appellants did not believe that they were required to seek stay relief to file the complaint, as § 362(a) of the Bankruptcy Code only stays actions against a debtor or its assets and may not be invoked by non-debtor third parties absent unusual circumstances in which the debtor could be considered the real party in interest. (*Id.* at 1, 4) In the alternative, Appellants sought relief from the automatic stay "for cause" under section § 362(d)(1). Appellants argued that the Debtor would not suffer any great prejudice if the Bankruptcy Court granted stay relief, whereas "imposing the automatic stay to preclude the filing and litigation of the Adversary Complaint would deprive the Movants of any protections they enjoy with respect to the overreach of the Foreign Representatives whose post-petition actions have significantly damaged the Movants' business interests in the United States." (*Id.* at 8-9) Appellants argued that it was unlikely that a claim against IBRC for damages arising from the misconduct of Appellees as foreign representatives would be allowed in the Irish Proceeding, and that there was no guaranty that such a proceeding would fully compensate Appellants for their damages. (*Id.* at 9)

Appellees objected to Stay Relief Motion on September 14, 2018. (B.D.I. 651) On October 24, 2018, Appellants filed a reply brief in further support of relief. (B.D.I. 656) On October 31, 2018, the Bankruptcy Court held a hearing on the Stay Relief Motion. No testimony or documentary evidence was offered into the record. (B.D.I. 658, 661) Following argument, the Bankruptcy Court ruled from the bench. (Hr'g Tr. at 29-35) For purposes of the *Barton* doctrine, the Bankruptcy Court determined that it was not the "appointing court." (*Id.* at 32) Rather, "the appointing authority is Ireland . . . and under *Barton*, that's where the Plaintiffs

5

should proceed." (*Id.* at 33) However, the Bankruptcy Court did not rest its decision to deny the Stay Relief Motion on this determination, stating its belief that to do so "would be a very expansive application of *Barton*." (*Id.* at 34) (noting court was unable to find any U.S. case applying *Barton* doctrine to insulate or protect trustees or representative appointed by foreign entity or government)) Although it was a "close call," the Bankruptcy Court determined that the automatic stay extended to the adversary proceeding. (Hr'g Tr. at 29-30) The Bankruptcy Court found "a significant identity of interests" between the Debtors and the Foreign Representatives, based on (a) indemnification obligations, and (b) the role of the Foreign Representatives in IBRC's liquidation. (*Id.* at 29) Finally, based on a weighing of relevant factors, including the parties' respective harms and likelihood of success on the merits, the Bankruptcy Court determined not to grant Appellants relief from the stay. (*Id.* at 30-32, 34-35)

Appellants timely appealed. (D.I. 1) The merits of the appeal are fully briefed. (D.I. 11, 17, 18) No party requested oral argument. The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

## III. JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.

1992).

IV.  **DISCUSSION**

A.  **Application of the *Barton* Doctrine**

The common law *Barton* doctrine bars suits against court-appointed fiduciaries in any venue except the appointing court, absent prior leave. Established by the Supreme Court in 1881 in *Barton v. Barbour*, 104 U.S. 126 (1881), the doctrine provides that "before a lawsuit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." *Id.* at 128. Although "*Barton* involved a receiver in state court, [] the circuit courts have extended the *Barton* doctrine to lawsuits against a bankruptcy trustee." *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000); *see also In re VistaCare Group*, 678 F.3d 218 (3d Cir. 2012).

Here, the Bankruptcy Court stated, in relevant part, that "[a] foreign representative is recognized, not appointed" by a United States bankruptcy court in an ancillary proceeding under chapter 15 of the Bankruptcy Code, and "[t]he power to act as the foreign representative" derives from Ireland, not from the United States. (*See* Hr'g Tr. at 33) Thus, the Bankruptcy Court determined that, for purposes of the *Barton* doctrine, it was not the "appointing court." (*Id.* at 32) Rather, "the appointing authority is Ireland . . . and under *Barton*, that's where the Plaintiffs should proceed." (*Id.* at 33)

Appellants argue that their complaint as filed in the Bankruptcy Court does not implicate the *Barton* doctrine because the action was brought in the appointing court, where the Foreign Representatives sought and obtained recognition. (D.I. 11 at 25-29) According to Appellants, "[i]n a Chapter 15 bankruptcy case, the bankruptcy court 'appoints' a debtor's foreign

7

representative for purposes of the *Barton* doctrine."[2] (*Id.* at 26) Appellants reason that an order of recognition is akin to the appointment of a bankruptcy trustee and creates oversight responsibility for the Bankruptcy Court. *See id.* Appellants further argue that the Bankruptcy Court is the only forum in which they could have filed their claims against Appellees, and they fault the Bankruptcy Court for having failed to exercise "oversight" over the Appellees.

According to Appellants, the Bankruptcy Court also erred in holding that the *Barton* doctrine could be applied extraterritorially. (Hr'g Tr. at 33) (stating that leave to sue for violations of Chapter 15 should be sought in Irish court, not in the Bankruptcy Court) Appellants argue the Bankruptcy Court effectively held that, "as a condition precedent to any lawsuit against the Foreign Representatives in the United States for breaches of United States law, Appellants would need to obtain leave from the Irish Court." (D.I. 11 at 26) According to Appellants, that policy undermines the Bankruptcy Code and other applicable United States law, and creates an undue burden on parties who are harmed in the United States from tortious conduct that occurs overseas. (*Id.*)

Appellees counter that Appellants' argument is controverted by the express language of the Bankruptcy Code, which provides that a foreign representative "means a person or body . . .

---

[2] Appellants cite *In re Qimonda AG*, 482 B.R. 896 (Bankr. E.D. Va. 2012), and *In re World Mktg. Chicago, LLC*, 584 B.R. 737 (Bankr. N.D. Ill. 2018), but neither case resolves this issue. In *Qimonda AG*, the bankruptcy court declined to apply the *Barton* doctrine to stay a lawsuit against a non-debtor subsidiary which did not fall under the purview of the foreign representative, but the court did not rule on whether the foreign representative was appointed by the German court or the U.S. court. *See* 482 B.R. at 896 (noting in dicta that "[a]ccepting the Foreign Administrator's argument that it makes no difference whether the Foreign Administrator was appointed initially by the German Court or by this Court (once a U.S. court has recognized the foreign main proceeding), it is still true that [the Foreign Administrator] was appointed by that Court with respect to [debtor], and not with respect to [the non-debtor subsidiary]"). The *World Marketing Chicago* case involved an adversary proceeding commenced in connection with a chapter 11 case against a liquidating trustee appointed by the same bankruptcy court.

***authorized in a foreign proceeding*** to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding," and that "[a] foreign representative applies to the court for recognition ***of a foreign proceeding in which the foreign representative has been appointed*** by filing a petition for recognition." 11 U.S.C. §§ 101(24), 1515(a) (emphasis added). The Bankruptcy Code requires that an application for recognition of a foreign proceeding must be accompanied by "a certified copy of the decision . . . ***appointing*** the foreign representative." *Id.* § 1515(b)(1) (emphasis added).

The application of the *Barton* doctrine to the facts here constitutes an issue of first impression. The Bankruptcy Court did not commit legal error by interpreting the *Barton* doctrine in a manner supported by the statutory language in the Bankruptcy Code itself. However, the Court need not decide the issue. Just as the Bankruptcy Court made clear that its denial of the Stay Relief Motion did not rest on application of the *Barton* doctrine – but rather rested on its legal determination to extend the automatic stay to the adversary proceeding and to deny Appellants relief from the automatic stay based on its consideration of the relevant stay relief factors – this Court, too, concludes that it need not decide whether the *Barton* doctrine may be applied extraterritorially.[3]

### B. Determination that the Automatic Stay Extends to the Adversary Proceeding

Section 362(a)(1) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

---

[3] Appellants argue that "the Bankruptcy Court's misapplication of *Barton* requires review and redress, lest extraterritorial application of *Barton* become the standard, or achieve precedential status." The Court disagrees.

9

11 U.S.C. § 362(a)(1). Appellants argue that the automatic stay does not extend (and should not have been extended) to the adversary proceeding, and that the Bankruptcy Court ignored relevant legal precedent on whether a suit against a Chapter 15 debtor's foreign representative in his individual capacity implicates the stay and, therefore, requires prior leave of the Bankruptcy Court.

Appellants observe that the complaint, on its face, is not asserted against the Debtor or any property of the Debtor. However, "[t]he fact that the action did not name the debtor [is] not dispositive" of "whether the automatic stay should be extended." *In re W.R. Grace & Co.*, 2004 WL 954772, *3 (D. Del. Apr. 29, 2004).

Appellants also argue that the Bankruptcy Court erred in extending the automatic stay to the adversary proceeding based on its finding of a significant identity of interests between the Foreign Representatives and the Debtor. (*Id.* at 13) Appellants insist that the automatic stay protects debtors and the assets of the bankruptcy estate but does not extend to estate fiduciaries when they are sued in their individual capacities. *See Greer v. Hartford Life & Accident Ins. Co. (In re G&L Drywall, Inc.)*, 63 F. App'x 663, 666 (4th Cir. 2003); *see also Phoenician Mediterranean Villa, LLC v. Swope (In re J & S Props., LLC)*, 545 B.R. 91, 105 (Bankr. W.D. Pa. 2015) ("[I]t is generally agreed that a bankruptcy trustee may be sued in his or her individual capacity for wrongful acts which exceed the scope of his or her authority – *i.e.*, a bankruptcy trustee may be personally liable for wrongful acts that are *ultra vires*.") (internal citations omitted).

The automatic stay serves several purposes, including providing "a debtor a breathing spell from creditors by stopping all collection efforts and all foreclosure actions," as well as protecting creditors "by preventing particular creditors from acting unilaterally to obtain

payment from a debtor to the detriment of other creditors." *McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 509 (3d Cir. 1997) (citing *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991)). The scope of the automatic stay is broad, but the clear language of section 362(a) only stays actions against a "debtor." *Id.* (citing *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982)). "Although the automatic stay can be extended to situations involving nondebtors, courts are careful to reserve such power to the most extreme and '"unusual circumstances."'" *W.R. Grace*, 2004 WL 954772, at *2 (citing *McCartney*, 106 F.3d at 510).

"Unusual circumstances" may be found where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *McCartney*, 106 F.3d at 510 (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)); *see also Belcufine v. Aloe*, 112 F.3d 633, 636-37 n.5 (3d Cir. 1997) (rationale articulated in *A.H. Robins* has since been adopted by Third Circuit). "Courts have also extended the stay to nondebtor third parties where stay protection is essential to the debtor's efforts of reorganization." *McCartney*, 106 F.3d at 510 (citing *In re Lazarus Burman Assocs.*, 161 B.R. 891, 899-900 (Bankr. E.D.N.Y. 1993) (enjoining guaranty actions against nondebtor principals of debtor partnerships because principals were only persons who could effectively formulate, fund, and carry out debtors' plans of reorganization)); *In re Nelson*, 140 B.R. 814, 816-17 (Bankr. M.D. Fla. 1992) (enjoining actions against nondebtor guarantor of debtor corporation's obligations where guarantor was president of debtor and president's services, whose expertise and attention were essential to reorganization of debtor).

"The purpose served by extending the stay must be consistent with the purpose of the stay itself, that is, to 'suspend actions that pose a serious threat to a corporate debtor's reorganization efforts.'" *In re Uni-Marts, LLC*, 404 B.R. 767, 781 (Bankr. D. Del. 2009) (quoting *In re First Cent. Fin. Corp.*, 238 B.R. 9, 19 (Bankr. E.D.N.Y. 1999)); *see also Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 Fed. Appx. 565, 570 (3d Cir. 2004) ("[C]ourts employ a broader view of the potential impact on the debtor. The standard for the grant of a stay is generally whether the litigation could interfere with the reorganization of the debtor.") (internal citations and quotation marks omitted). As one court has noted:

> The broader rule here is that a debtor's stay may extend to a non-debtor only when necessary to protect the debtor's reorganization. The threatened harm may be to needed debtor funds (e.g., when non-debtors are entitled to indemnification) or personnel (e.g., when debtor needs the services of non-debtors facing crushing litigation). The question is whether the action against the non-debtor is sufficiently likely to have a material effect upon reorganization efforts, that debtor protection requires an exception to the usual limited scope of the stay.

*Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999) (internal quotation marks and citations omitted).

Here, the complaint seeks relief in the form of "modification of the Bankruptcy Court's Recognition Order to remove the Foreign Representatives." (B.D.I. 633-3 at 31-33) As Appellees correctly argue, the Bankruptcy Court lacks authority to appoint a replacement foreign representative, and such relief would essentially leave IBRC unable to administer assets in the United States and unable to take any action in the ongoing Chapter 15 proceeding. The Bankruptcy Court noted in its ruling that "the foreign proceeding can only be effectuated through the foreign representatives," and that a foreign representative is "more like a Debtor in possession" than a chapter 7 trustee. (Hr'g Tr. at 30) Unusual circumstances occur when a claim against the nondebtor will have an immediate adverse economic consequence for the

12

debtor's estate. Without foreign representatives, IBRC would lose the ability to effectuate its own foreign proceeding and protect its assets within the United States, to the immediate detriment of IBRC. The available facts support a finding that there is such an identity between the debtor and these third-party defendants that a judgment against Appellees individually "will in effect be a judgment or finding against the Debtor." *McCartney*, 106 F.3d at 510 (internal quotation marks omitted).

The Court agrees these facts warranted the extension of the automatic stay in this case. The Bankruptcy Court's determination on this point is not clearly erroneous

### C.  Whether the Bankruptcy Court Erred in Denying Relief From Stay

Appellants argue that the Bankruptcy Court misapplied the legal standards applicable to requests for stay relief. Section 362(d) provides that the court "shall" grant relief, for example, by terminating, annulling, modifying, or conditioning the stay "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d); *see also* 3 COLLIER ON BANKRUPTCY ¶ 362.07 (16TH 2019). Courts are accorded flexibility in determining whether cause exists to lift the automatic stay. *See In re Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006).

The legislative history accompanying section 362 indicates that "cause" may be established by a single factor such as a lack of any connection with or interference with the pending bankruptcy case. *See Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576-77 (Bankr. D. Del. 1992) (citing H.R. Rep. No. 95- 595, 95th Cong., 1st Sess., 343-344 (1977)); *see also In re Fowler*, 259 B.R. 856, 858-59 (Bankr. E.D. Tex. 2001) (providing illustrative list of single factors that may establish cause under section 362(d)(1)).

Appellants argue that the Bankruptcy Court erred by not making any factual findings regarding the Appellants' *prima facie* showing of "cause." Appellants argue that a party suing a

trustee makes a *prima facie* case when it shows "that its claim is not without foundation." *VistaCare,* 678 F.3d at 232 (internal citation omitted). According to Appellees, Appellants failed to present a *prima facie* case to support the Stay Relief Motion by failing to submit any evidence in support of the unverified complaint and Stay Relief Motion. While "cause" may be an "amorphous concept" (D.I. 11 at 23 n. 7), Appellees argue that the establishment of cause requires evidence, as demonstrated by the record in each of the burden-shifting cases cited by Appellants. (D.I. 17 at 9)

The Court agrees. Determining whether "cause" has been shown requires a fact-specific inquiry, in which the movant must substantiate its case with an evidentiary showing of a factual and legal right to the relief it seeks. *See In re RNI Wind Down Corp.*, 348 B.R. 286, 299-300 (Bankr. D. Del. 2006) (denying stay relief motion where movant failed to move supporting declaration and documentation into record and further finding that, even if declaration and supporting documents had been admitted into evidence, such evidence was insufficient to make *prima facie* case to lift stay); *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) ("[T]he movant must initially produce evidence establishing 'cause' for the relief he requests.") (internal citations omitted).[4] Appellants concede that they declined to submit any evidence in an effort to make such a *prima facie* showing. (D.I. 11 at 6; Hr'g Tr. 12 (counsel for Appellants acknowledging that complaint

---

[4] In each of the cases relied upon by Appellants – *VistaCare Group, Sonnax,* and *Abeinsa* – the moving party submitted evidence to establish a *prima facie* showing of cause, which is a predicate for relief. *See In re VistaCare Grp., LLC,* 678 F.3d 218, 223 (3d Cir. 2012) (noting that movant provided testimony during lift stay hearing); *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1285 (2d Cir. 1990) ("Section 362(d)(1) requires an initial showing of cause by the movant" and, if movant fails to make such initial showing, "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."); *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 99 B.R. 591, 595 n. 3 (D. Vt. 1989) ("[T]he [movant] has the burden of showing good cause for relief from stay. . . . On the credible evidence of record, we do not think [movant] has carried its burden."), *aff'd* 907 F.2d 1280 (2d Cir. 1990); *In re Abeinsa Holding, Inc.,* No. 16-10790 (KJC), 2016 WL 5867039, at *1-2 (Bankr. D. Del. Oct. 6, 2016) (citing documentary evidence submitted by party moving for stay relief).

"wasn't verified" and asserting "we do have a form of verification, but we don't believe, Your Honor, that that's necessary"))

Appellants next argue that "a finding of 'likelihood of success on the merits' is not the applicable legal standard for granting relief from the automatic stay." (D.I. 11 at 15) But the Court agrees with Appellees that, even assuming that Appellants had successfully presented a *prima facie* case, the Bankruptcy Court would need to find sufficient cause to lift the stay by balancing the "the rights of the Clarendon Parties against those of IBRC and the Foreign Representative." (D.I. 11 at 21) Appellants' reliance on their unverified "well-pleaded complaint" is unavailing, both because the complaint was not verified or moved into evidence, and because the "well-pleaded complaint" standard – while applicable in the context of a motion to dismiss – is inapposite here.

Although § 362(d) does not define "cause," the Third Circuit has held that courts should consider "the totality of the circumstances in each particular case" to determine whether "cause" for relief from stay exists. *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997). Specifically, "[t]o establish cause, the party seeking relief from the stay must show that '[the] balance of hardships from not obtaining relief tips significantly in [its] favor.'" *Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (quoting *In re FRG*, 115 B.R. 72, 74 (E.D. Pa.1990)). Courts in this District have applied a hardship balancing test to assess the existence of "cause." *In re Aleris Intern., Inc.*, 456 B.R. 35, 47 (Bankr. D. Del. 2011) (citing *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007); *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993)). "The three prongs of the balancing test are (1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay; (2) whether the hardship to the non-bankrupt party by the maintenance of the stay considerably outweighs the hardship to the debtor if the stay is lifted;

15

and (3) whether it is probable that the creditor will prevail on the *merits* of its case against the debtor." *Id.* (citing *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010); *In re Cont'l Airlines,* 152 B.R. at 424; *In re Rexene Prod. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)). Issues of personal and subject matter jurisdiction, like other issues relevant to the Appellants' likelihood of success on the merits, are proper considerations as part of assessing the third prong of this standard. The Court finds no error in the Bankruptcy Court's consideration of those issues in deciding to deny the Stay Relief Motion.

Finally, Appellants argue that the Bankruptcy Court's jurisdictional rulings lacked evidentiary foundation and relied on incorrect legal standards. In considering issues of personal and subject matter jurisdiction, the Bankruptcy Court determined that where "conduct did not occur in the United States, but may have tangentially affected property located in the United States," extending personal jurisdiction to foreign actors "would be a misuse of Chapter 15" and "counterproductive to Chapter 15." (Hr'g Tr. at 31) The Bankruptcy Court determined that, under these circumstances, there is "a real danger of bootstrapping," especially as the "conduct alleged in no way [a]ffects the operation of the Chapter 15." (*Id.* at 30-31) On the other hand, the Bankruptcy Court observed that if the Foreign Representatives had taken an illegal action "in the act of dealing with . . . property located in the United States, clearly there would be jurisdiction because the action occurred in the United States." (*Id.*) Based on the facts asserted in the complaint, which would not support jurisdiction over the adversary proceeding, the Court finds no error in the Bankruptcy Court's determination that the likelihood of success on the merits prong did not weigh in Appellants' favor. Nor did the Bankruptcy Court err in its determination not to grant relief from stay based on a weighing of the relevant factors.

## V. CONCLUSION

For the foregoing reasons, the Order will be affirmed. An appropriate Order follows.

September 27, 2019
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT